## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

RIVERSIDE CONSTRUCTION COMPANY, INC.                                **PLAINTIFF**

V.                                                    CIVIL ACTION NO. 13,0016-CI

ENTERGY MISSISSIPPI, INC.                                          **DEFENDANT**

### COMPLAINT

COMES NOW Plaintiff Riverside Construction Company, Inc., by and through its counsel of record, and files this Complaint seeking damages from Defendant Entergy Mississippi, Inc.  In support of its requested relief, Plaintiff sets forth the following:

### PARTIES

1.

Plaintiff Riverside Construction Company, Inc. ("Riverside") is a Mississippi corporation in good standing with its office located at 4111 Washington Street, Vicksburg, Mississippi 39180.

2.

Defendant Entergy Mississippi, Inc. ("Entergy") is a Mississippi corporation in good standing with its office located at 308 East Pearl Street, Jackson, MS 39201-3408. Process may be served on Entergy's registered agent for process, James W. Snider, Jr., 308 East Pearl Street, Jackson, Mississippi 39215.

# FILED

FEB 04 2013

SHELLY ASHLEY-PALMERTREE, CIRCUIT CLERK

BY _____ D.C.



EXHIBIT

A

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this claim pursuant to *Miss. Code Ann.* § 9-7-81 (Rev. 2002).

4.

Venue is proper in Warren County pursuant to *Miss. Code Ann.* §11-11-3 (Rev. 2004) where the subject matter of this lawsuit is located and where substantial acts and/or omissions occurred.

## ALLEGATIONS

5.

Entergy is the owner and/or operator of the Baxter Wilson Steam Electric Station (""Baxter Wilson Plant") located at 770 Kemps Bottom Road, Vicksburg, Mississippi and bordered by the Mississippi River.

6.

Entergy also leases and operates the dock and Dolphin Fender System at the Baxter Wilson Plant, which is a part of the Fuel Oil Handling and Storage Facilities at the Baxter Wilson Plant.

7.

On or about April 5, 2008, barges struck and damaged various components of the Dolphin Fender System ("fender system") at the dock of the Baxter Wilson plant located on the eastern bank of the Mississippi River. The Dolphin Fender System is designed to function as a protective device for the dock.

2

8.

On or about December 16, 2008, Entergy requested proposals from contractors to secure rigging to the damaged fender system and pull up the fender system with a crane and set it on the crane barge deck to further assess the damages.

9.

Riverside submitted a proposal which was accepted by Entergy.

10.

On or about September 8, 2009, Entergy and Riverside entered into a contract to perform the specified scope of work ("the Contract"). A copy of the Contract is appended hereto as **Exhibit "A"** and incorporated herein by reference.

11.

Thereafter, on or about September 30, 2011, Riverside mobilized to the site and attempted to pull up the fender system with the crane specified in the Contract. However, Riverside was unable to pull up the fender system and was forced to demobilize from the site.

12.

Riverside notified Entergy's Contract Manager of the circumstances preventing the lifting of the fender system and that a larger crane would be required to perform the scope of work, which would not be available for several months or longer.

13.

During the time Riverside had to wait for the larger crane, authorized representatives of both Riverside and Entergy met to discuss the work to be performed under the Contract and the needed repairs to the fender system.

3

14.

Instead of placing the fender system on the barge to assess the damages, Entergy's authorized representatives directed Riverside to proceed with the needed repairs to the fender system and place it back into operation.

15.

Entergy was aware that placing the fender system back in operation exceed the original scope of work and price set forth in the Contract.

16.

Riverside would not have proceeded with the needed repairs to the fender system to place it back into operation without being compensated for this additional work as directed by Entergy.

17.

Representatives of Entergy where aware or should have been aware that Riverside expected to be compensated for any and all work that exceeded the original scope and price set forth in the Contract.

18.

Riverside proceeded with the needed repairs and placed the fender system back in operation as directed by Entergy with the right and expectation of being compensated for the performance of this additional work.

19.

Representatives from Entergy observed and inspected Riverside's performance of the additional work needed to repair the fender system.

4

20.

Even though representatives of Entergy observed Riverside's performance of the additional work, no representative of Entergy directed Riverside to stop any of the work which was beyond the original scope of work and price set forth in the Contract.

21.

Riverside has competed the needed repairs to the fender system and it is once again operational.

22.

In October of 2012, Riverside submitted to Entergy its final invoice for $1,728,946.15 reflecting the cost associated with the repairs to the fender system. A copy of Riverside's summary of costs is appended hereto as **Exhibit "B"** and incorporated herein by reference.

23.

Entergy has paid Riverside $425,904.59 leaving a balance of $1,303,041.56 of the amount but refused to pay Riverside the outstanding balance.

24.

The outstanding balance of $1,303,041.56 was liquidated on November 16, 2012, Riverside is therefore entitled to pre-judgment interest at the legal rate of eight percent (8%) per annum from and after November 16, 2012. A copy of Riverside's Invoice No. 5134 is appended hereto as **Exhibit "C"** and incorporated herein by reference.

25.

Entergy's withholding payment from Riverside is a breach of Entergy's payment obligations under the Contract, wrongful, with reckless disregard for the terms and conditions of the Contract, and inflicted in the spirit of wanton disregard for the rights of Riverside and constitutes bad faith for which Riverside is entitled to receive exemplary damages.

26.

Entergy has the full use and benefit of its docking facility at the Baxter Wilson Plant as a direct result of the work performed by Riverside at the direction of Entergy's authorized representatives.

27.

Entergy would be unjustly enriched if it were permitted to retain the benefit of Riverside's work without being compensated for the labor, material and equipment utilized to complete the needed repairs to place the fender system back in operation.

28.

Riverside is entitled to be paid for its work under the term and conditions of the Contract or in the alternative in *quantum meriut* should Entergy argue that no contract existed for Riverside's performance of the needed repairs to place the fender system back in operation.

**PRAYER FOR RELIEF**

**WHEREFORE,** the above premises considered, Riverside respectfully prays for judgment in favor of Riverside and against Entergy in an amount not less than $1,303,041.56, plus pre- and post-judgment interest, attorneys' fees and expenses,

6

punitive damages in an amount not less that $3,000,000 and such other and further

relief as the Court shall deem just and appropriate.

THIS the 5th day of February, 2013.

Respectfully submitted,

RIVERSIDE CONSTRUCTION
COMPANY, INC.

By: _____
Christopher Solop, MSB 7687
Brenda T. Redfern, MSB 7428
Lynn Patton Thompson, MSB 10256
Kimberly B. Taft, MSB 104168
Its Attorneys

OF COUNSEL:
Biggs, Ingram, Solop & Carlson, PLLC
111 Capitol Building
111 East Capitol Street, Suite 101 (39201)
P.O. Box 14028
Jackson, MS 39236-4028
Telephone: (601) 987-4822
Facsimile: (601) 713-9920
Email: csolop@bisclaw.com
       bredfern@bisclaw.com
       lynn.thompson@bisclaw.com
       ktaft@bisclaw.com

EXHIBIT "A"

September 8, 2009

Riverside Construction Co Inc
**Attn: Louis Miller**
P. O. Box 821238
Vicksburg, MS 39182

Subject:      CONTRACT NO. 10251017
                 Entergy Mississippi, Inc. - Baxter Wilson Plant

Dear Mr. Miller:

Enclosed find one copy of the above-subject Contract. *Please review, sign and preferably email the contract to Brenda Burks; or you may fax it to 281-297-6218.* Please forward either with the executed Contract or under separate cover a current certificate of insurance, with the required coverages and endorsements to my attention. **Both documents must be on file prior to starting any Work.**

Please invoice Entergy Mississippi, Inc., Attn: Accounting, Baxter Wilson Plant, 770 Kemp Bottom Road, Vicksburg, MS 39180-9196.

If you have any questions, please give me a call at 601/631-6209.

Sincerely,

Brenda Burks

MCMS/
Enclosure

cc:     Donald K Mcarthur
       File 10251017

**ENTERGY MISSISSIPPI, INC.**
**Baxter Wilson Plant**
**770 Kemp Bottom Road**
**Vicksburg, MS 39180-9196**

**Contract Number: 10251017**
**Effective Date: September 9, 2009**

ENTERGY MULTIPURPOSE MAINTENANCE, MODIFICATION AND
CONSTRUCTION SERVICES STAND-ALONE CONTRACT

THIS CONTRACT is between Entergy Mississippi, Inc. ("Owner") and Riverside Construction Co Inc, ("Contractor"). Contractor's commencement of performance of services or acceptance of any payments hereunder in advance of Contractor's execution hereof shall constitute acceptance of all terms set forth herein.

In consideration of the undertakings and subject to the conditions set forth herein, the parties agree as follows:

1.      **Definitions**. The words and terms specified in this Section, or pronouns used in their stead, shall, for the purpose of this Contract, have the meanings set forth below unless the context clearly indicates another meaning:

1.1      "Affiliate" means (a) Entergy Corporation, (b) any corporation, company, partnership or other entity in the United States which Entergy Corporation now or hereafter owns or controls, directly or indirectly ("Affiliated Company"), (c) any joint venture in which Entergy Corporation or an Affiliated Company owns fifty percent (50%) or more of the ownership interest, (d) any corporation, company, partnership or other entity that has an ownership interest, directly or indirectly, in any Site controlled, operated or managed by an Affiliated Company, or joint venture as described in (c) immediately preceding, and (e) any successor in interest to (a) through (d) above.

1.2      "Applicable Environmental Laws" means any and all laws, statutes, regulations, orders, rules, ordinances, or bylaws, permits, licenses, and other governmental approvals, and judicial interpretations thereof, whether existing as of the date of this Contract, previously in force and with continuing applicability, or subsequently enacted or issued by the United States or any state, locality or municipality in which Work under this Contract is carried out or performed or in which transportation, storage or disposal of Hazardous Substances occurs, or of any other governmental or quasi-governmental authority having jurisdiction, that relate to the prevention, abatement, remediation, or elimination of pollution, Hazardous Substances or protection of the environment, including, but not limited to, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9601 et seq.; the Resource Conservation and Recovery Act of 1976, as amended by the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. § 6901 et seq.; the Clean Water Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Emergency Planning and Community Right to Know Act of 1986, 42 U.S.C. § 11001 et seq.; the Safe Drinking Water Act, the Toxic Substances Control Act, 15 U.S.C. Sections 2601 et seq.; and the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., as any or all may be amended, changed or supplemented.

1.3   "Arkansas Gross Receipts Tax" means the tax levied by Ark. Stat. Ann. § 26-52-301 et seq. on the seller of tangible personal property or taxable services pursuant to Ark. Stat. Ann. § 26-52-519(a) and GR-79.

1.4   "Competence" or "Competent" means the expertise, experience, capability and specialized knowledge to perform Work in a good and workmanlike manner and within all accepted standards for the industry.

1.5   "Contractor Taxes" shall mean all applicable sales, use, gross receipts and similar taxes legally imposed on Contractor or any Subcontractor for the Work as the primarily responsible party and not as collection agent on behalf of Owner, including, but not limited to, sales taxes paid (or which should have been paid) to Contractor's or Subcontractors' vendors, or use taxes self-accrued and remitted directly (or which should have been self-accrued and remitted directly) to taxing authorities by Contractor or Subcontractors, if such sales, use, gross receipts and similar taxes are incorporated (or should have been incorporated) in lump sum fixed price contract prices set forth herein. Contractor Taxes shall specifically include, but are not limited to, sales, use, gross receipts and similar taxes on consumables, rentals and any other taxable items that are purchased for use in the performance of the Work but do not become part of the permanent materials of Owner at the end of the Work and Mississippi Contractor's Tax. Despite the fact that Arkansas Gross Receipts Tax is legally imposed on Contractor as the primarily responsible party, Arkansas Gross Receipts Tax shall be excluded from Contractor Taxes.

1.6   "Hazardous Substance" means any substance, pollutant, toxic substance, hazardous waste, hazardous material, or petroleum product now or hereafter defined in, denoted by or designated pursuant to the law of any state, locality or municipality, or any governmental or quasi-governmental authority having jurisdiction, or any state in which Work under this Contract is to be carried out or performed, or in which transportation, storage or disposal of any substance or material related to, or arising from, such Work occurs, Sections 307(a) and 311(b)(2)(A) of the Federal Clean Water Act, 33 U.S.C. § 1317(a), 1321(b)(2)(A); Section 112 of the Clean Air Act, 42 U.S.C. § 3412; Section 3001 of the Federal Resource Conservation and Recovery Act, 42 U.S.C. § 6921; Section 7 of the Federal Toxic Substances Control Act, 15 U.S.C. § 2606; Section 101(14) and Section 102 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601(14) and 9602, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9604 and 9607; or any other Applicable Environmental Laws, as defined herein, and as any or all of the foregoing may be amended, changed or supplemented.

1.7   "Law" means all applicable laws including, without limitation the following: constitutional law, civil law, common law, international law, equity, treaties, statutes, decrees, edicts, codes, orders, judgments, rules, ordinances and regulations of any local, municipal, territorial, provincial, federated, state, national or other duly constituted governmental authority or agency.

1.8   "Mississippi Contractor's Tax" means the tax levied by Miss. Ann. Code § 27-65-21 and Rule 41.

1.9   "Site(s)" means the locations where the Work is to be performed, as designated in this Contract.

1.10   "Specifications" means the description of required maintenance, repair, modification, construction or other services required by Owner and any detailed requirements contained in this Contract as same may be modified or amended.

1.11   "Subcontractor(s)" means any subcontractors, suppliers or materialmen providing services or material to Contractor for the purpose of completing Work.

1.12    "Work" means each and every element of the maintenance, modification, repair, construction, technical services, or other activities required by this Contract, and includes all labor, testing, materials, equipment, transportation and other items necessary to complete such activities, except for items that are expressly stated to be the responsibility of the Owner in this Contract.

2.    **Terms.** Contractor agrees to perform and complete the Work as described below for the amount of money and in accordance with Owner's schedule described below.

3.    **Description and Schedule of Work.** Contractor shall perform and complete the Work or jobs in accordance with Owner's specifications or standards.

Background:

The Entergy Dock Dolphin Fender System at Baxter Wilson Plant was recently damaged. A preliminary survey was performed to access the damages. It was found that the extreme river dolphin/piling floating fender system was knocked off the dolphin and hanging in the water by the safety chains. All 12-rubber bumper/fender blocks appeared to have been torn loose from their end plates with approximately three still attached to the fender system and the remaining missing. Contractor shall perform the following repairs.

3.1    Contractor shall provide all equipment, materials and labor required to perform the following Work for Baxter Wilson Plant located at Vicksburg, MS. Contractor shall:

      3..1.1    Provide mobilization and demobilization of crew, equipment(including tugboat, crane, etc.)

      3.1.2    Secure rigging to the fender ststem and pull up the fender system with a crane and set on the crane barge deck(on barge supplied by Riverside for that purpose) to further assess the damages of fender system.

      3.1.4    Replace (12) twelve rubber bumper/fender blocks with a quantity of four (4) Morse 48 inch Buckling Column Fender #E46018, and replace a quantity of eight (8) each Morse 48 inch Buckling Column Fender #E46020.

      3.1.5    Replace damaged safety chains as required.

      3.1.6    Provide for proper disposal of all materials as required by the Department of Environmental Quality.

3.2    Contractor shall furnish the following equipment to peform the Work:

      3.2.1    Crane Barge MM107 with American 9270 crane and crew

      3.2.2    Utility boat

      3.2.3    Mobile crane and/or manlift as needed.

      3.2.4    Miscellaneous tools and equipment as required.

3.3    Contractor shall perform two (2) mobilizations/demobilizations to Owner's Baxter Wilson Plant. The first visit shall be to lift the damaged system for inspection. The second mobilization/demobilization will occur once the Mississipi River is at or below 10.00' on the Vicksburg gage.

3.4     Any additional cost, as well as Cost and Scope reduction, must be approved in advance by the Contract Manager. A detailed report, with two (2) hardcopies and one (1) electronic copy via CD/DVD, may be required prior to payment of invoices.

3.5     Work will start on or about **September 7, 2009** and shall be entirely completed on or before **December 1, 2009**. Time is an essential element of this Contract. Contractor's Work shall be undertaken in full cooperation with the Owner and with the least-possible interference with the continuity and efficiency of other activities being conducted at the Site. Should any provision of any document provided by Contractor and attached to this Contract be in conflict with any of the provisions of the main body of this Contract, such provision of such Contractor-provided document will be null and void.

4.     <u>Compensation</u>. Work shall be performed on a time and materials basis per the following:

4.1     For a quantity of four (4) Morse 48 inch Buckling Column Fender #E46018, Owner will compensate Contractor the unit price of $3,840.00 each.

4.2     For a quantity of eight (8) each Morse 48 inch Buckling Column Fender #E46020, Owner will compensate Contractor the unit price of $4,440.00 each.

4.3     Safety chains as required, shall be compensated at cost, not to exceed $6,000.00.

Note:  The prices in Sections 4.1 through 4.3 represent materials only, and do not include installation or additional fabrication, if required.

4.4     Labor, equipment, etc., will be compensated in accordance with the Rate Sheet listed in Exhibit A, hereto attached and made a part hereof.

Invoices submitted against this contract **shall not exceed $176,590.** without prior consent of Owner. Invoices shall reference Contract Number 10250107, and Work Request number(43268).

Any additional cost, as well as Cost and Scope reduction, must be approved in advance by the Contract Manager.

5.     <u>Representatives and Claims Notifications</u>.

5.1     The following representatives are designated by Owner and Contractor respectively, for communications and liaison relative to this Contract:

| **Owner's Contract Manager:** | | **Contractor's Project Manager:** | |
|---|---|---|---|
| Name: | Donald K. Mcarthur | Name | Louis Miller |
| Company: | Entergy Mississippi, Inc. | Company: | Riverside Construction Co Inc |
| Address: | Baxter Wilson Plant | Address: | Po Box 821238 |
| | Vicksburg, MS 39180-9196 | | Vicksburg, MS  39182 |
| Phone: | 601/631-6252 | Phone: | 601-636-3255 |

5.2     The Contract Manager shall not have the authority to waive any terms hereof or to execute Amendments; except that a Contract Manager is authorized to make minor changes pursuant to Section

10. Contractor's "Project Manager" shall have full authority to act for Contractor in connection with this Contract. Contractor shall not change this designated representative without the prior written approval of the Owner.

     5.3     Any notice given by either party to the other pursuant to this Contract, including but not limited to, termination notices or assignments or subcontracts, shall be in writing and be deemed validly given if delivered in person, delivered by private, prepaid courier, sent by facsimile with confirmation or deposited in the mail properly stamped with the required postage and addressed to the last-known office address of the respective addressee. Either party hereto shall have the right to change any address or addressee it may have given to the other party by giving such other party due notice in writing of such a change. Until so changed, notices shall be given to the addressees at the addresses set forth above.

     5.4     Contractor shall immediately notify the Owner's Contract Manager in writing of any Claims or accidents or injuries to persons or property in connection with Work hereunder and shall provide Owner prompt and free access to accident reports or claim investigations as requested by Owner. A copy of the notice required in the preceding sentence shall be sent by Contractor to Claims Management, Entergy Services, Inc., P.O. Box 8082 Little Rock, Arkansas 72203, and to Legal Services Department, P.O. Box 61000, New Orleans, Louisiana 70161. Claims shall mean all claims (a) brought for which Owner or an Affiliate may be liable, or (b) asserted as arising from or connected with the contractual relationship, or (c) which may materially impair the ability of the Contractor to perform any of its obligations to Owner and all events that in the light of reasonable experience may give rise to a claim included in the above categories.

6.     **Invoicing and Payment and Taxes.**

     6.1     For the satisfactory performance of Work, Owner agrees to pay Contractor the compensation due for the Work specified above upon the later of (i) acceptance of the Work by Owner or (ii) forty-five (45) days from Owner's receipt of Contractor's properly prepared invoice for the completed Work subject to the Owner's right to withhold those portions of the charges set forth therein that the Owner may contest in good faith, and other applicable provisions hereof. Invoices must be submitted within sixty (60) days of completion of Work or Contractor waives its right to compensation. Payment of Contractor's final invoice is conditioned upon receipt by Owner of satisfactory evidence of final and discharged liens arising because of the Work. Acceptance by Contractor of final payment shall constitute a waiver and release of all claims by Contractor against Owner in connection with the Work performed. All invoices submitted by Contractor shall be in the form and supported by such documentation as Owner may reasonably require. Any money due Contractor under this or other contracts between the parties shall be adjusted for amounts inappropriately invoiced, whether discovered prior or subsequent to payment by Owner. For all Work performed on time and material, unit price, or cost reimbursable basis, Contractor shall keep complete books or records and receipts of expenses to support charges billed. Overtime may be required in order to complete a specific portion of the Work or to carry out the Work effectively. If this is a fixed-price or lump-sum Contract, such overtime shall be deemed to be included as part of the fixed-price or lump-sum stated. In other cases, prior to scheduling any overtime, the written approval of the Contract Manager is required. Owner shall not pay the Contractor or its employees for non-performance time, i.e., vacation time, sick time, holidays or other leave time authorized by the Contractor, nor for travel time to and from the Site designated for the performance of services hereunder or time during which Contractor's employees are unable to work due to Contractor's noncompliance with Site-specific rules and regulations. The Contractor's holidays shall be consistent with the holiday schedule at the Site for which Work is being performed, unless otherwise specified.

     6.2     Owner's Contract Manager, and the appropriate Contract Number must be referenced on all invoices. Upon request, Owner's Contract Manager will provide the mailing address for submitting invoices for payment.

6.3     Taxes.

6.3.1     Owner shall be responsible for all applicable sales, use, gross receipts and similar taxes levied on items sold pursuant to this Contract, provided, however, Owner shall not be responsible for Contractor Taxes except as provided in Section 6.3.2, and Owner shall not be responsible for any sales, use, gross receipts or similar taxes for which Owner, in its sole discretion, asserts any available exemption or exclusion from such taxes.   Contractor shall cooperate with Owner and diligently prosecute any exemption or exclusion (including, if applicable, a request for refund) asserted by Owner, in Owner's sole discretion, from any sales, use, gross receipts or similar taxes on any item furnished in connection with the Work..

6.3.2     If Contractor bills Owner for Mississippi Contractor's Tax and Owner has not asserted any available exemption, exclusion or lower applicable rate of such Mississippi Contractor's Tax, Owner shall reimburse Contractor for such Mississippi Contractor's Tax if Contractor shall state such taxes as a separate line item on its invoice to Owner at the time of the performance of the Work.   If Contractor does not state Mississippi Contractor's Tax as a separate line item on its invoice to Owner at the time of the performance of the Work, Owner shall be relieved of any obligation to pay or reimburse Contractor for Mississippi Contractor's Tax.  For the avoidance of doubt, Owner shall not be responsible for Mississippi Contractor's Tax not billed to Owner at the time of the performance of the Work, but instead subsequently assessed on Contractor and billed after an audit or inquiry by taxing authorities or otherwise.

6.3.3     Other than for lump sum fixed price Work, Contractor shall separately state the price of materials and labor on its invoice.

6.3.4     Contractor shall develop procedures and make reasonable efforts to minimize the applicable sales, use, gross receipts and similar tax burden on Contractor's purchases of equipment, materials and services under this Contract, including, if applicable, the purchase of any equipment, materials and services exempt from sales, use, gross receipts and similar taxes via presentation of a resale exemption certificate or other applicable documentation to Contractor's vendors and Subcontractors.

6.3.5     Contractor will indemnify, defend and hold the Owner and Affiliates harmless from taxes, penalties or interest for Contractor Taxes.

6.3.6     Prior to payment of any subsequently assessed sales, use, gross receipts or similar taxes for which Contractor is entitled to reimbursement pursuant to this Section 6.3, Contractor shall give Owner written notice of any proposed or actual adjustment or assessment of any such taxes imposed on Contractor arising out of this Contract, within such time as will allow Owner a reasonable period in which to evaluate and timely respond to the underlying adjustment or assessment of such taxes without being prejudiced thereby.  If Contractor fails to provide Owner with the written notice contemplated by this Section 6.3.6 in time to allow Owner to challenge such taxes without being prejudiced thereby, Owner shall be relieved of its obligation to reimburse Contractor for such taxes.  For the avoidance of doubt, Owner shall not be responsible to pay or reimburse Contractor for penalties or charges of any kind, or interest on taxes subsequently assessed on Contractor and billed after an audit or inquiry by taxing authorities or otherwise.

7.    **Termination**.  Owner reserves the right to terminate this Contract, at any time, and for any or no reason, upon prior written notice to Contractor.  In such event, Work in process and information developed for Owner by Contractor prior to termination shall be delivered to Owner. In the event Work is terminated in accordance with this Section, Owner shall pay Contractor, subject to any other provisions of this Contract that may reduce or suspend payment, (a) according to the compensation provisions contained in this Contract for non-lump sum or non fixed-price Work performed and obligations incurred prior to the termination, (b) for lump-sum or fixed-price Work, the percentage of any lump-sum or fixed-price which represents the percentage of the Work satisfactorily completed by Contractor, (c) for direct costs that Contractor incurs in terminating Work under the Contract, provided those costs (1) were authorized in advance by Owner, and (2) are properly supported by timesheets, invoices and the like. Owner's sole liability to Contractor for termination is contained in this Section and Owner shall not be liable for any costs, claims, damages or liabilities whatsoever of Contractor or its Subcontractors, including, without limitation, consequential, special or indirect damages, loss of anticipated profits or reimbursement for Work unperformed.  Termination shall not relieve either party of obligations arising out of this Contract in connection with the Work performed prior to termination.

8.    **Suspension**.  Owner may suspend, at any time and for any reason, all or any of the Work upon prior written notice to Contractor and Contractor shall promptly comply and shall not place further orders or subcontracts for material, services or facilities unless required to do so in the suspension notice from Owner. Owner may, at any time, authorize Contractor to resume any part of the suspended Work and Contractor shall then promptly do so.  Within ten (10) days from a subsequent written notice from Owner to Contractor to resume the suspended Work, Contractor shall submit a written invoice to Owner setting forth any actual and reasonable increases in Contractor's costs resulting solely from the Owner's suspension, and Owner shall reimburse Contractor for such costs, subject to Owner's right to contest in good faith the accuracy of the costs. Owner's sole liability to Contractor for suspension shall be determined in accordance with this Section 8, and Owner  shall not be liable for any other costs, claims, damages or liabilities whatsoever of Contractor or its Subcontractors, including without limitation, loss of anticipated profit or reimbursement for Work suspended. Contractor's contracts with Subcontractors shall contain a similar provision to this Section 8 to protect Owner from liability to Subcontractors for suspended Work.

9.    **Risk of Loss and Use; Transportation**.  In the event Owner provides Contractor with materials, tools or equipment, Owner will make a full and complete accounting to Owner of the disposition of all such items issued and delivered to Contractor by Owner.  Contractor will be responsible (at full replacement cost) for the loss or destruction of any materials, tools or equipment in its possession during the period of contract performance and for Work in process until the Work is accepted in its entirety by Owner, except to the extent any such loss is covered by the proceeds of an All Risk/Builder's Risk Policy paid to Owner.  Upon completion of the Work, Contractor shall return any such property to Owner in the condition in which it was received, except as repaired or modified in the performance of the Work.  Any or all such materials, tools or equipment are furnished on an AS-IS, WHERE IS, basis and Contractor shall be solely responsible for assuring itself of the safety and suitability of such equipment prior to use and shall indemnify, hold harmless and defend Owner, its employees, agents and Affiliates against any claims or damages arising from such use by Contractor. Unless provided otherwise in this Contract, all Work requiring loading, unloading, hauling, handling, storing, caring for, reloading, securing and rehauling of all Owner-furnished materials and equipment as required to transport all such items from the point of delivery (Owner or third-party storage points, freight cars, truck trailers or staging areas, whether at the Owner's facility or Contractor's facility) to the place of use, installation, repair or modification shall be performed by the Contractor at its expense. Contractor shall also pay on its own account any demurrage or damage charges imposed on the Owner by carriers that arise from Contractor's action or inaction. The Contractor shall report to the Owner, in writing, within twenty-four (24) hours after receipt, any shortage in or damage

to Owner-furnished materials or equipment. The Contractor shall maintain accurate records of all Owner-furnished materials on hand, and of the disposition and use of such materials or equipment.

10.    **Amendments and Minor Changes.**  The Contract Manager shall have the authority to order, orally or in writing, minor changes in the scope of Work contained in this Contract, provided the change does not affect the compensation, cost or schedule of performance. The Contractor shall carry out such directions promptly.  Except for the foregoing, no waiver, addition, deletion, or modification of any provision contained in this Contract shall be binding unless in writing and signed by duly-authorized representatives of both parties.

11.    **Warranty.**

11.1    The Contractor represents and warrants that it has the Competence to perform the Work, has or shall obtain the necessary tools, equipment and personnel to perform the Work, shall assign qualified and competent personnel to the performance of the Work, such personnel shall use their best efforts to perform the Work described herein in the most expeditious, professional and economical manner consistent with the interests of the Owner, shall maintain and use all tools and equipment in accordance with manufacturer's specifications and recommendations and good engineering and operational practices, has or shall obtain, at its expense, before performing any Work all the necessary certificates, permits, licenses and authorizations to perform Work and conduct business, shall perform all Work in accordance with applicable Law and Applicable Environmental Laws, shall perform all Work in good faith, promptly and with due diligence and Competence, and fully comprehends the requirements and contingencies for performing Work and it shall examine the Site for any additional or special requirements and contingencies prior to performing Work. Contractor further represents and warrants that it shall ascertain whether any drawings and Specifications applicable to the Work are at variance with any applicable Law and good engineering and operational practices prior to beginning any Work. If Contractor discovers any variance, it shall promptly notify Owner in writing and ensure the necessary changes are made before proceeding with the part of the Work affected.

11.2    The Contractor warrants that it will perform the Work provided for in this Contract in conformance with the highest standards of care and practice appropriate to the nature of the Work and exercise the highest degree of thoroughness, competence and care that is customary in the utility industry. The Contractor further warrants that the Work performed hereunder will be of the kind and quality described in this Contract and will be free of defects in design (except where the Owner has furnished the design), title, workmanship, and materials. Contractor warrants that any equipment or goods supplied hereunder shall be new unless otherwise specified in this Contract and that any Work supplied, repaired or modified by Contractor shall meet all performance or acceptance criteria in the applicable Specifications.

11.3    Without limiting the rights that Owner may have otherwise at Law or equity and in addition to the other warranties granted, Contractor guarantees and warrants that all Work performed and any materials and equipment provided in connection with the Work shall be free from defects or deficiencies for one year from the date of completion or acceptance of all Work, whichever occurs last. If Owner discovers any defect or deficiency during this warranty period, and Owner has notified Contractor of the defect or deficiency within a reasonable period of time after the end of the warranty period, Contractor, at its sole cost and expense, shall at Owner's option promptly repair or replace the defect or deficiency (including all other labor, materials and other Work necessarily incidental to effecting such correction of the defect or deficiency). Any Work provided under this Section  to correct any defect or deficiency shall be warranted on the same basis as provided in this Section for the longer of (a) the balance of the one-year warranty period or (b) six months from the date of completion or acceptance, whichever occurs last, of the repair or replacement. In addition,       Contractor shall use its best efforts to ensure that all warranties provided by Subcontractors, distributors, manufacturers or any other person or entity are assigned to the Owner. If any warranty cannot be assigned to the applicable Owner, Contractor shall use its best efforts to make that warranty available for the applicable Owner's benefit. Contractor shall deliver a

copy of each written warranty that may be applicable to Owner. Contractor shall perform such tests as the Owner may reasonably require to verify that corrective rework complies with the original warranty. Should Contractor fail to remedy nonconformities promptly in accordance with this Section, the Owner, in addition to other available remedies at law or in equity, may perform such remedial work at Contractor's sole expense.

11.4   All Work must be thoroughly inspected by Contractor, and the Owner shall have the right, at reasonable times and frequencies and during normal working hours, to inspect and review Work being performed pursuant to this Contract by the Contractor or authorized subcontractors at the Contractor's, Subcontractors' or Owners' facilities without charge by Contractor. Neither the failure to make such inspections nor the approval of Work being performed shall relieve the Contractor of its responsibilities under this Contract.

12.   **Independent Contractor.**

12.1   Contractor shall maintain the status of an independent contractor with the sole authority to control and direct the performance of the details of the Work being rendered by its and Subcontractors' employees, and with responsibility for determining the safety of its and Subcontractors' employees performing Work. Contractor will at all times act as an independent contractor, and nothing stated or implied in this Contract shall be construed to make Contractor, nor shall Contractor represent Contractor to be, an employee or agent of Owner or any of its Affiliates. While Contractor's services shall meet with the approval of Owner, Owner is interested in the results to be achieved and, accordingly, the detail, manner and method of performing Work shall be the responsibility of, and under the supervision and control of, Contractor and Subcontractors. Contractor shall supply all personnel utilized by it in performing Work. Contractor and Subcontractors shall have complete control of, and supervision over their personnel, tools and equipment. The Owner shall have the right, but not the duty, to review the qualifications of Contractor's personnel and to disapprove unqualified personnel before assignment to perform Work hereunder. Nothing in this Section shall be construed as precluding the Owner from raising the "Statutory Employer" defense, if applicable, to any suit filed against the Owner by an employee of the Contractor or any Subcontractor.  Further, notwithstanding anything in this Subsection to the contrary, the parties mutually agree that it is their intention to recognize the Owner as the statutory employer of the Contractor's and Subcontractors' employees, whether direct employees or statutory employees of the Contractor or any Subcontractor, in accordance with Louisiana Revised Statute 23:1061, while Contractor's and any Subcontractors' employees are providing Work hereunder within the State of Louisiana.

12.2   Notwithstanding anything in this Contract to the contrary, Contractor, and not Owner or any Affiliate, shall be solely responsible for (a) payment of all wages or salary or other compensation to Contractor personnel; (b) as applicable, withholding and payment of federal, state or local individual income taxes, FICA and other payroll taxes and applicable amounts with respect to any payments made to Contractor and Contractor personnel, except for taxes allowed to be recovered pursuant to Section 6.3; (c) providing all pension and welfare benefits and other employment-related benefits, as applicable, to Contractor personnel, including, but not limited to, vacation, sick-pay, insurance, pension, medical, disability benefits, dental and life insurance and any profit-sharing benefits; and (d) all other legal and labor requirements regarding Contractor personnel. Contractor shall indemnify and hold harmless Owner and its past, present and future Affiliates, and any one or all of its past, present and future officers, directors, employees, plan fiduciaries, shareholders, and agents with respect to any claims, loss, expenses (including attorneys' fees and court costs), liability and damage, and penalties that any one or all of them may incur relating to or arising from or out of or in connection with any allegations by Contractor' personnel or Contractor or any third party, including any governmental entity that (1) any Contractor personnel are or were employees of Owner or Affiliate; (2) that any one or all are entitled to benefits from Owner or any Affiliates, including, without limitation, benefit or welfare plan participation, vacation, or sick leave; (3)

asserts wrongful termination, libel, slander, interference with employment or business relationships, or any type of alleged employment action or alleged discrimination in employment activities.

## 13.    Laws, Project Rules and Licenses.

13.1    Contractor shall, prior to commencement of Work at any Site, request in writing from the Contract Manager copies of any applicable Site health, safety, quality and security rules, procedures and programs. Contractors and Subcontractors with access to the Owner's or Affiliates network shall also be required to abide by the then-current communications policies to which Owner subscribes, and which are available upon request. Owner may require Contractor, Subcontractor, and some or all of their employees to execute a confidentiality agreement related to the enforcement of the Entergy Communications Systems Policy; provided however, that failure of the Owner to require the execution of such confidentiality agreement shall not relieve the Contractor and Subcontractor from liability for failure to adhere to such policy. Contractor and its Subcontractors, if any, shall observe and comply with all such applicable Site health, safety and security rules, procedures and programs, and shall abide by all Law and the terms of any permit required for, or relating to, the Work to be rendered pursuant to this Contract. Contractor shall indemnify, defend and hold harmless Owner and its Affiliates with respect to any claims, expenses (including attorneys' fees), liability or damage arising out of Contractor's or Subcontractors' failure to comply with any such Law, rules, procedures or programs or the provisions of this Section 13.

13.2    Contractor shall be responsible for providing a healthful and safe work place and working environment for its employees and Subcontractors during performance of the Work. Contractor shall protect the health and safety of Contractor's, Subcontractor's and Owner's employees, the public, and other third parties from any danger associated with the Work. All tools, equipment, facilities and other items used by the Contractor and its practices employed to accomplish the Work are considered part of the working environment. No representation or warranty is made by Owner or its Affiliates that applicable Site health, safety, quality or security rules, procedures and programs are complete or adequate to protect any person from danger. To the contrary, it is incumbent upon the Contractor to assess the risks of its operations and develop safety procedures accordingly. Contractor's obligations under Section 13 hereof are minimum requirements and Contractor's observance and compliance with such rules, procedures and programs shall not serve to discharge or release Contractor from its responsibility to provide its employees and Subcontractors a healthful and safe work place and working environment or to adapt more stringent rules, procedures and programs as may be necessary to prevent personal injury, death or property damage arising out of or relating to the Work to be performed.  In addition, Contractor is responsible for and shall ensure that all Work is performed in compliance with any changes to such Site health, safety, quality and security rules, procedures and programs as are made by Owner. Contractor agrees to adopt whatever methods, procedures and precautions are necessary to comply with the provisions of this Section 13 and shall not rely entirely upon Owner rules, procedures or programs to accomplish the goals and requirements of such Section. Owner may modify or replace, at any time, the Site health, safety, quality and security rules, procedures and programs applicable to Work by notifying Contractor either orally or in writing without complying with any provision on giving notice in this Contract. Contractor shall furnish Owner with written notice of Contractor's individual who is responsible for supervising Contractor's safety program and related record-keeping. If required by this Contract, Contractor shall employ a full-time, on-site qualified safety representative.

13.3    Contractor shall not undertake performance of the Work until the Work can be done safely. Contractor shall at all times conduct all Work under this Contract in a manner to avoid the risk of bodily harm or property damage.  Contractor shall promptly take all precautions that are necessary and adequate to guard against any conditions that involve a risk of bodily harm or property damage. Contractor will only employ Competent, skilled employees and Subcontractors who are knowledgeable of dangers involved in the Work. Contractor shall continuously inspect all Work, materials and equipment to discover and determine any such conditions and shall be solely responsible for identification and correction of any

such conditions. Contractor shall notify the Owner immediately of any accident or injury. Contractor shall provide the Owner a complete copy of all accident reports and access to any accident investigations or descriptions.

13.4    The Contractor shall not permit or suffer the introduction or use of intoxicating liquor, beverages, drugs or the possession of firearms, explosives, or weapons or any other contraband upon Work or Sites, or upon any location owned, leased or controlled by Owner.

13.5    It is incumbent upon Contractor, Subcontractors, and their personnel, to perform all tasks with safety as its highest priority. To this end, when non-English speaking personnel are employed or present on the Site, it is the Contractor's obligation and responsibility to ensure that all personnel understand all work area signage, emergency announcements via public address systems, Owner radios, cell and land-based phones, computer and personal communications, as well as safety training information, including but not limited to videotaped recordings provided by Owner or its Affiliates to the Contractor and that all non-English speaking personnel are capable of notifying others of safety hazards encountered or created in the workplace or Site. Supervision by an individual capable of translating shall be used to ensure that all signs, announcements or notifications can be translated immediately, providing for effective and safe work-rule enforcement. Should there be multiple non-English speaking crews, a translator is required for each crew. In the event the translator leaves a worksite where the Work is being performed by non-English speaking personnel, the Work being performed shall stop and the non-English speaking personnel shall vacate the worksite areas until they have a translator. Manpower charges to Owner shall cease for the time period the non-English speaking personnel are without a translator.

13.6    Contractor acknowledges that compliance with the provisions of Section 13 is of the highest importance. Any breach of this Section 13 shall constitute a substantial and material breach of this Contract entitling Owner, to exercise the rights and remedies specified in this Contract and any other rights and remedies under applicable Law or equity.

13.7    Contractor shall comply with all applicable Law. Without limiting the foregoing, unless this Contract is exempt from Executive Order 11246, under the rules and regulations of the Secretary of Labor (41 C.F.R. § 60), the Contractor agrees that during the performance of this Contract, it will fully comply with the provisions of the equal opportunity clause as set forth in Section 202 of Executive Order 11246 and 41 C.F.R. § 60-1.4(a)(1-7), which provisions are hereby incorporated by reference and made a part of this Contract. During the performance of this Contract, Contractor also agrees that it will fully comply with the applicable equal opportunity provisions of the Rehabilitation Act of 1973, as amended, and applicable regulations, 41 C.F.R. § 60-741, et seq., and the Vietnam Era Veterans Readjustment Act of 1974, as amended, and applicable regulations, 41 C.F.R. § 60-2.50, et seq., which are hereby incorporated by reference and made a part of this Contract. The Contractor certifies that it does not and will not maintain or provide for its employees any facilities that are segregated by race, color, religion or national origin, or permit its employees to perform any services at any location, under its control, where segregated facilities are maintained, and Contractor will obtain a similar certification for all non-exempt Subcontractors, as required by 41 C.F.R. § 60-1.8. The Contractor further agrees that to the extent applicable, including but not limited to, the purposes of promoting small and small disadvantaged businesses, the Contractor will fully comply with the requirements of the Small Business Act, 15 U.S.C. Section 631, et seq., and the Office of Procurement Policy Act, 41 U.S.C. Section 423, et seq., as implemented in the Federal Acquisition Regulations found at 48 C.F.R. Part 1, et seq., all of which are hereby incorporated by reference and made part of this Contract. Contractor shall provide Owner with information, as requested by Owner or its Affiliates, to support any reporting that Owner must make pursuant to legal requirements, including information that Owner or its Affiliates need or otherwise request in order to comply with reporting requirements of 48 C.F.R. 53.219 concerning small, small disadvantaged, and women-owned small businesses. Notwithstanding the foregoing, Contractor shall comply with the regulations identified in 48 C.F.R. 52.244-6, all of which is incorporated herein by reference. Contractor shall ensure that any subcontractors do the same. In addition, Contractor shall, if applicable, comply with

the Fair Labor Standards Act of 1938 (particularly sections 6, 7 and 12 thereof), as amended; the Social Security Act, as amended; and federal and state unemployment tax laws.

13.8    Contractor and all Subcontractors shall procure at their own expense all necessary municipal and other governmental permits, licenses and inspections in connection with Contractor's and Subcontractors' Work performed under this Contract, including, but not limited to, applicable sales, use, gross receipts and similar tax permits. When required by Law or Owner, Contractor warrants that it will hold and will maintain current throughout this Contract, a Certificate of License issued by the Contractors Licensing Board of Arkansas if performing Work in Arkansas, a Certificate of Responsibility issued by the Mississippi Board of Contractors if performing Work in Mississippi, a license issued by the Louisiana State Licensing Board for Contractors if performing Work in Louisiana, any license required under Texas law if performing Work in Texas, or similar licenses from other states that are recognized and accepted by, if applicable, such Arkansas, Louisiana and Mississippi and Texas Boards. Contractor warrants that such license numbers were furnished to the Owner and were accurately printed on the exterior of Contractor's bid for the Work. Contractor will verify, and represents to Owner that all subcontractors approved by the Owner are duly-licensed.

13.9    With respect to the Work performed by Contractor or any Subcontractor, Contractor shall provide the Owner with such records and reports, including safety reports, concerning the Work as the Owner shall request.

13.10    Whenever requested to do so by the Contract Manager, Contractor shall immediately remove from the Sites, any employee of Contractor, any Subcontractor or any employee of Subcontractor performing Work. Contractor shall not allow such employee whom Owner or any Affiliate have requested be removed, back on the Site or on any of Owner's or Affiliates Sites or facilities without the prior written consent of the Owner. CONTRACTOR HEREBY RELEASES, FOREVER DISCHARGES AND HOLDS HARMLESS OWNER AND ITS AFFILIATES FROM ANY COSTS, CLAIMS, LOSSES, AND DAMAGES OF ANY KIND WHATSOEVER BASED UPON NEGLIGENCE (ACTIVE OR PASSIVE)DEFAMATION, WRONGFUL DISCHARGE OR OTHERWISE WHICH CONTRACTOR, OWNER OR AFFILIATES MAY PAY, SUFFER, OR INCUR AS THE RESULT OF ANY SUCH REMOVAL.

13.11    Owner may, from time to time, issue one or more requests to Contractor to furnish to Owner any or all of the following information: financial statements (including, but not limited to, balance sheets and income statements certified as prepared in accordance with generally accepted accounting principles), bank and trade references, Dun and Bradstreet Number, the legal form, state of incorporation or organization and full legal name of all of Contractor's parent companies, and periodic updates to any or all of the foregoing information. Contractor, at its sole cost and expense, shall promptly comply with such requests.

## 14.    Use of Information.

14.1    Contractor warrants that it has full and unrestricted right to disclose all data and documents presented to Owner in the performance of this Contract, and that Owner has full and unrestricted rights to use, copy and distribute such documents and data as Owner may deem appropriate, and that such data and documents shall be the sole and exclusive property of Owner. Contractor, during the term of this Contract and afterward, shall not disclose specifications, drawings, data, software, business or technical information or any confidential or proprietary information provided to Contractor by Owner in connection with this Contract without Owner's prior written consent, except where such information was already publicly available or except where disclosure is required by judicial or regulatory bodies.

14.2    If either Contractor or Owner is made the subject of any claim or lawsuit based on the alleged infringement of any third-party patent, copyright or trade secret by reason of any aspect of the materials, services or Work provided or performed hereunder, it shall promptly notify the other party thereof in writing. Contractor shall defend, hold harmless and indemnify Owner and Affiliates against all claims or lawsuits based upon the actual or alleged infringement of any third-party right. The indemnity shall include, without limitation, all penalties, awards and judgments; all court and arbitration costs; attorneys' fees; and other reasonable out-of-pocket costs incurred in connection with such claims or lawsuits. If any action results in an injunction against Owner or an Affiliate with respect to the Work, materials, services or facilities provided under this Contract, or in the event the use of the Work, materials, services or facilities furnished by the Contractor hereunder, or any part thereof, is, in such suit, held to constitute infringement, Contractor agrees that it shall, at its option and sole expense, either (a) procure for Owner or Affiliate the right to continue using the infringing subject matter, or (b) replace the infringing materials, Work, services or facilities with non-infringing items of equivalent value and functionality or modify the same so that it becomes non-infringing and retains its full value and functionality.

## 15.    Risk Allocation.

15.1    Contractor shall release and indemnify Owner and hold Owner harmless for loss or damage, howsoever caused, to Contractor's or Subcontractor's tools, equipment and other property, whether owned, leased, rented or borrowed, that are used or intended for use in the Work to be performed and for any consequential, special, incidental or indirect damages or loss of anticipated profits sustained by Contractor or Subcontractors.

15.2    Contractor shall compensate Owner for loss of or damage to existing property on the Site where Work is, or is to be, performed, and for any resulting indirect damages, or loss of anticipated profits sustained by Owner, if said loss or damage resulted from, arose from or related to the Work performed by Contractor or Subcontractors.

15.3    Contractor shall compensate Owner for loss or damage, howsoever caused, to Owner's property intended to be incorporated into or used in the Work to be performed and delivered to or located at the Site where Work is, or is to be performed.

15.4    Contractor shall release and indemnify Owner and hold Owner harmless for loss or damage, howsoever caused, to all Work in progress and all of Contractor's property intended to be incorporated into the Work and delivered to or located at the Site where Work is, or is to be, performed.

15.5    Notwithstanding any other provisions of this Contract to the contrary, Contractor shall also be responsible and not entitled to compensation from Owner for (a) any loss of money or securities in the care, custody or control of Contractor that are used or intended for use in performing Work, (b) unexplained or mysterious disappearance of any property in Contractor's care, custody or control, or shortage of any property disclosed on taking inventory, or (c) theft of property on the part of Contractor, Subcontractors or their agents or employees.

15.6    **THE PROVISIONS OF THIS SECTION 15 SHALL APPLY EVEN IF THE LOSS OR DAMAGE RESULTS FROM OWNER'S ACTIVE OR PASSIVE NEGLIGENCE.**

## 16.    Release and Indemnity.

16.1    Contractor shall, to the fullest extent allowed by applicable law, indemnify, protect and hold harmless Owner, Affiliates and their contractors and each of their officers, directors, control persons, employees, agents and representatives (the "Indemnitees") from and against any and all losses, damages, including consequential, incidental and punitive damages, claims, liabilities, costs and expenses (including, without limitation, demands, fines, remediation costs, penalties, attorneys' fees, court costs, legal,

accounting, consulting, engineering and other expenses) that may be imposed on, incurred by, or asserted against the Indemnitees or any of them by any party or parties (including, without limitation, a governmental entity), caused by, arising from, relating to or in connection with, in whole or in part, directly or indirectly: (a) Contractor's or Subcontractor's breach of any provision of this Contract, including, but not limited to, the representation and warranties set forth in this Contract, (b) Contractor's or Subcontractor's negligence, wrongful act or omission, breach of implied warranties, or strict liability by reason of property damage, personal injury or death, of whatsoever nature in connection with the performance of the Work by the Contractor or Subcontractor, (c) any violation of Law or Applicable Environmental Laws by Contractor or Subcontractor or (d) the treatment, storage, disposal, handling, transportation, release, spillage or leakage of any Hazardous Substance in any form. **THIS INDEMNITY SHALL APPLY EVEN IN THE EVENT OF THE CONCURRENT NEGLIGENCE, ACTIVE OR PASSIVE, OF INDEMNITEES, OR ANY OR ALL OF THEM.** Indemnitees may require Contractor to defend all suits or claims concerning the foregoing.

16.2    Further, the Contractor shall be solely responsible for and shall indemnify, protect and hold harmless Indemnitees, and upon request of an Indemnitee, defend the Indemnitees, and each of them, from and against any and all losses, damages, including consequential, incidental and punitive damages, claims, liabilities, costs and expenses (including, without limitation, demands, fines, penalties, attorneys' fees, court costs, legal, accounting, consulting, engineering and other expenses), on account of the death of, or injury to the Contractor or any Subcontractor, any employee or agent of either, or any third party, caused by, connected with, relating to or arising from, in any way, in whole or in part, directly or indirectly, the Work performed or to be performed, or from the presence of the Contractor, Subcontractor, or their suppliers, materialmen, employees, agents or representatives on or near any Site or any property owned, leased, controlled or occupied by Owner or any Affiliate, **WITHOUT REGARD TO WHETHER ANY SUCH DEATH OR PERSONAL INJURIES HAVE BEEN CAUSED BY OR ARE ATTRIBUTABLE TO, IN WHOLE OR IN PART, DIRECTLY OR INDIRECTLY, THE NEGLIGENCE, ACTIVE OR PASSIVE, OF ANY OR ALL INDEMNITEES, THE CONDITION OF THE SITE, STRICT OR PRODUCTS LIABILITY, OR OTHERWISE, AND NOTWITHSTANDING ANY OTHER PROVISIONS HEREIN TO THE CONTRARY.**

## 17.    Subcontracts or Assignments.

17.1    For Work to be performed in Louisiana, Contractor agrees to give preference to sources of supply within the State of Louisiana in subcontracting opportunities. Contractor shall not employ outside subcontractors to perform any of the services covered by this Contract without first procuring the written consent of Owner and requiring the subcontractor or assignee to produce evidence of insurance coverage required in Section 18. No approval shall relieve Contractor of any of its obligations under this Contract. Contractor shall be responsible for Work performed by all of its Subcontractors (approved or otherwise) to the same extent it is for activities performed by Contractor's employees and shall remain liable for all acts, omissions, errors and negligence of a Subcontractor. Contractor further hereby agrees to provide maximum practicable opportunity to small and small disadvantaged businesses (as such businesses are defined by the Small Business Administration or by the Federal Acquisition Regulations) for participation in any subcontracts that are to be let by Contractor in the performance of its obligations under this Contract. Lists of all subcontractors that qualify as such small or small disadvantaged businesses shall be supplied to Owner by Contractor.

17.2    Contractor shall not assign this Contract in whole or in part without the prior written consent of Owner which consent may be withheld for any reason and any such purported assignment shall be null and void and, at Owner's option, will constitute a material breach of this Contract. No assignment of this Contract even if consented to by Owner shall relieve Contractor of its responsibilities under this

Contract. Any assignee of Contractor shall meet all the requirements of Section 18 as a condition precedent to the assignment.

**18.    Insurance.**

18.2    Contractor shall provide and maintain during the term of this Contract unless otherwise specified, at its own expense, insurance coverages in forms and amounts that Contractor believes will adequately protect it, but in no case less than:

(a)    Notwithstanding any applicable statutory exemptions that may exist, Workers' Compensation Insurance in accordance with all applicable state, federal, and maritime laws, including Employer's Liability Insurance in the amount of $500,000 per accident/disease.  The policy shall be endorsed to include a waiver of subrogation in favor of the Owner and Affiliates.

(b)    Commercial General Liability Insurance including Contractual Liability Coverage covering liability assumed under this Contract, Products Liability Coverage, Completed Operations Coverage to remain in effect for three years following the expiration or termination of this Contract, Broad Form Property Liability Coverage, Personal Injury Coverage, and Explosion, Collapse and Underground Hazards, with a combined single limit of $1,000,000 per occurrence for Bodily Injury and Property Damage.

(c)    Commercial Automobile Liability Insurance including all owned, hired, leased, assigned and non-owned vehicles, with a combined single limit of $1,000,000 per accident for Bodily Injury and Property Damage.

(d)    Excess or Umbrella Liability Coverage following the form of coverages required in Subsections 18.1(a) through 18.1(c) above, with limits of liability, when combined with such primary coverage limits, equal to $5,000,000 per occurrence.

(e)    If the work will utilize vessels and/or barges on navigatable waterways, then the following marine coverage's shall be maintained during the term of this Contract for Owners, charters or operators of the vessels and their crews:

- Hull and Machinery insurance written for the full insured hull value.
- Protection & Indemnity coverage including crew with a $1,000,000 limit of liability.
- Maritime Employers Liability with limit of $1,000,000 any one person/any one accident
- OPA/CERCLA Pollution Liability Coverage with limit of $1,000,000 each occurrence.

(f)    Such other insurance as may be deemed necessary or desirable by the Owner for the Work provided pursuant to this Contract.

18.2    Contractor's insurance policies required by Subsections 18.1(b), 18.1(c) and 18.1(d) above, shall include Owner and Affiliates as Additional Insureds with respect to Contractor's performance under and liability arising from this Contract.  Contractor hereby waives all rights of recourse, including any right to which another may be subrogated, against Owner and Affiliates for personal injury, including death, and property damage.  All of Contractor's policies of insurance shall be primary and noncontributing with any other insurance maintained by Owner and Affiliates.  Policies are to provide Owner with at least thirty (30) days' prior written notice of cancellation or any material adverse change in conditions or limit of liability.

18.3    Contractor shall provide Owner with Certificates of Insurance issued to Owner and Affiliates as the Certificate Holder, evidencing coverage currently in effect upon execution of this Contract and annually thereafter pursuant to the requirements of this Section 18.

18.4    Unless agreed otherwise in writing by the Owner, Contractor shall require any subcontractor providing services or Work under this Contract to carry insurance coverages in forms and amounts consistent with the requirements of this Insurance Section. Contractor shall obtain Certificates of Insurance evidencing such coverage prior to commencement of services or Work by the Subcontractor and shall present such Certificates evidencing coverage for the duration of the subcontract to the Owner and annually thereafter pursuant to the requirements of this Section 18.

18.5    Contractor and Subcontractors shall not begin Work until all of the insurance required of Contractor and Subcontractors is in force and the necessary documents have been received by Owner. Compliance with this requirement is hereby expressly made a condition precedent to the obligation of Owner to make payment for any Work performed.

18.6    The minimum insurance requirements set forth above shall not vary, limit or waive Contractor's or Subcontractors' legal or contractual responsibilities or liabilities to any party.

19.    <u>Environmental Requirements</u>.

19.1    Contractor and its Subcontractors shall, in performing Work, have the responsibility and liability for the proper management of Hazardous Substances and waste in accordance with all Law and Applicable Environmental Laws and in accordance with any permit required for, or relating to, the Work to be performed. In particular, Contractor and its Subcontractors shall implement procedures to minimize the generation of Hazardous Substances and waste. These procedures shall include, at a minimum, process substitution, materials recovery, and continued product use. When possible, Contractor shall select less-toxic alternatives to minimize Hazardous Substance generation, consolidate (with like product) partially full containers of paint, solvent, chemicals, and other products whenever possible, to minimize Hazardous-Substance waste and allow use of the remaining product, ensure that any empty containers to be discarded are deemed "empty" in accordance with 40 C.F.R. § 261.7 or applicable state regulations, not commingle waste generated by Contractor or Subcontractor with any waste generated by Owner or others without prior written permission from Owner, segregate Hazardous Substances from non-Hazardous Substances at all times, either return to the supplier for credit, or transfer to Contractor's storage facility or next job site for use, any unused and still-usable materials belonging to Contractor, and control waste and Hazardous Substance generation activities, to the extent possible, to fall within the conditionally exempt small-quantity or small-quantity-generator regulations under the Resource Conservation and Recovery Act, as amended, and its regulations and any applicable state regulations. Contractor and its Subcontractors shall also ensure that all waste and Hazardous Substances are handled in compliance with any Exhibits relating to the management of such materials that are made a part of this Contract.

19.2    Contractor represents and warrants that it and its Subcontractors are and will remain in compliance with all Applicable Environmental Laws, have not been placed on notice of, or received any request for information, demand, or complaint concerning any violation of any Applicable Environmental Laws, are not now subject to any consent decree, compliance order, or enforcement order pertaining to any Applicable Environmental Laws, and have never been cited, convicted, fined or the subject of any administrative or criminal proceeding in connection with the handling, removal, storage, transportation, treatment, or disposal of any Hazardous Substance, that it and all of its Subcontractors have all licenses, permits, certifications and approvals from all appropriate federal, state and local authorities and governmental entities necessary to comply with all Law and Applicable Environmental Laws requirements for their activities and operations under this Contract, that its employees and the employees of all

Subcontractors are properly trained in those federal, state and local environmental regulations and Laws that are relevant or applicable to the Work to be performed and are qualified and Competent to undertake the Work, that it will provide its employees and its Subcontractors' employees with any special information or training necessary for the successful completion of the Work under this Contract and further warrants that, if Hazardous Substances will be generated, handled, removed, stored, transported, treated or disposed of as part of the Work, that it will use only employees and Subcontractors' employees who are fully trained in the proper handling of Hazardous Substances.

19.3   In addition, Contractor represents and warrants that it will disclose to its employees and to its Subcontractors' employees the identity and nature of any Hazardous Substance to be encountered or handled by such employees during the course of the Work, that it and all Subcontractors have requested, and have been provided with, and have read and understood, and ·will comply with the Entergy Environmental Guidelines for the Site, and that Contractor and Subcontractors have communicated said Guidelines to their respective employees, and Contractor's and Subcontractors' employees shall abide by said Guidelines,   that it and its Subcontractors will comply with the Occupational Safety and Health Administrator's Hazard Communication Standard, 29 C.F.R. § 1910.1200 regarding Material Safety Data Sheets ("MSDS"), and 29 C.F.R. § 1926 regarding safety and health regulations for construction.

19.4   At least two weeks prior to transporting any chemical onto a Site, Contractor shall provide the Contract Manager with a MSDS for each such chemical.  Contractor shall not bring any chemical onto a Site that has been prohibited by Owner.

19.5   Contractor acknowledges that it has been made aware of the possibility that Work under some Contracts may involve, without limitation, the handling, storage, disposal, transportation, removal, or treatment of items such as, but not limited to, oil-filled equipment, fluorescent and other light bulbs or lamps, ballasts, battery cases, batteries, and containers of used oil. Some or all of such materials or items may constitute or contain Hazardous Substances. Certain of the materials or items may contain polychlorinated biphenyls (PCBs). If Work under this Contract involves such items or materials, Contractor represents and warrants that it will communicate such information to its and Subcontractors' employees, that its and its Subcontractors' employees are trained, qualified and Competent to handle properly such Hazardous Substances, that Contractor's and Subcontractors' employees are properly licensed to handle such Hazardous Substances, and that Contractor and Subcontractors are knowledgeable and fully capable of properly handling, storing, disposing of, transporting, removing or treating such Hazardous Substances in compliance with Applicable Environmental Laws.

20.   Title.  Title to all Work, services, materials, supplies and structures procured by Contractor from third parties·or supplied by Contractor and incorporated, or intended at the time of the procurement or supply to be incorporated, into the Work (excluding Contractor's tools, equipment and leased and rented items) shall pass to the Owner upon payment therefore by Owner, upon delivery to Owner's Site or when consumed in the performance of Work, whichever occurs first.

21.   Audit.

21.1   The Contractor and all Subcontractors shall, throughout the term of this Contract and for at least four (4) years thereafter, keep and maintain complete and accurate time and other records or accounts of the Contractor, its affiliates and Subcontractors as are necessary to verify and support any and all charges billed to the Owner associated with this Contract. This includes verification that any and all material, services, labor and other expenses incurred under this Contract have been paid. This provision shall not entitle the Owner to audit fixed prices. All books and records shall be maintained in accordance with generally accepted accounting principles. Such books and records shall be made available at the Contractor's facility in the United States for verification, copying, audit and inspection by the Owner or its representatives, including Owner-authorized third-party auditors. Any such audit shall be at the Owner's

expense and conducted during the Contractor's normal working hours; provided, however, that the Contractor shall provide reasonable assistance necessary to enable the Owner to conduct such audit, and shall not be entitled to charge the Owner for any such assistance. Amounts incorrectly or inappropriately invoiced to the Owner, whether discovered prior to or subsequent to payment by the Owner, shall be adjusted or reimbursed to the applicable Owner by the Contractor within five (5) days of notification by the applicable Owner to the Contractor of the error in the invoice. Contractor shall include the necessary provisions in its agreements with Subcontractors that shall assure access by Owner's employees and representatives to applicable records of Subcontractors.

21.2    Contractor represents and warrants that all financial settlements, billings, and reports rendered to Owner or its representatives shall reflect properly the facts about all activities and transactions handled for the account of Owner, which data may be relied upon as being complete and accurate in any further recordings or reporting made by Owner or its representatives for whatever purpose. Contractor shall notify Owner promptly upon discovery of any instance where the Contractor fails to comply with the foregoing. If Contractor discovers or is advised of any errors or exceptions related to its invoicing for Work, Contractor and Owner shall together review the nature of the errors or exceptions, and Contractor will, if appropriate, promptly adjust the relevant invoice and refund overpayments.

## 22.    Force Majeure.

22.1    Force Majeure" means any event beyond the control and without fault or negligence of the party claiming inability to perform its obligations and which party is unable to prevent or provide against by the exercise of reasonable diligence, including, but not limited to, acts of God, acts of the public enemy, riot, civil commotion, expropriation or condemnation of facilities or Sites, changes in applicable Law, floods, droughts, fires, explosions, sabotage, terrorism, war, police or hostile action, criminal behavior, or other catastrophes, accidents causing damage to or destruction, in whole or in part, of the equipment or property necessary to perform the Work, or failure or refusal by any regulatory or other agency to act upon or grant permits, or licenses. Inability to pay moneys or financial hardship shall not, however, constitute events of Force Majeure.

22.2    No delay or failure in performance by Owner or Contractor shall constitute default under this Contract if, and to the extent, the delay or failure is caused by Force Majeure. Unless the Force Majeure event substantially frustrates performance of the Work or the purpose for the Work under this Contract, Force Majeure shall not operate to excuse, but only to delay performance of Work. If Work is delayed by reason of Force Majeure, Contractor shall promptly notify Owner. Contractor shall at its own expense do all things reasonably possible to mitigate or remove the effect of the Force Majeure event, and shall resume performance as soon as possible. In no event shall Owner be liable to Contractor and Contractor shall hold Owner harmless for Contractor's, Subcontractors', and their employees' damages, anticipated profits, or other sums or payments occasioned by the event.

## 23.    Termination Due to Contractor's Fault.

23.1    If any or all Work to be performed is abandoned by Contractor, or if Contractor fails to meet its payroll or other current obligations, or allows any liens to attach to Owner's property under any applicable laws; or if the Owner, in its sole discretion, determines that the schedule of Work is not being maintained or that Contractor is violating any of the conditions or provisions of this Contract, in whole or in part; or if the Owner, in its sole discretion, determines that Contractor is refusing or failing to perform properly any Work or that Contractor is performing Work in bad faith or not in accordance with the terms thereof; or if Owner, in its sole discretion, determines that Contractor is failing to provide the labor, supervision, tools, equipment or materials necessary for the prompt performance of Work or failing to use due diligence in the performance thereof, the Owner may, without notice to Contractor's sureties and without prejudice to or limiting other remedies as may be available to the Owner, terminate Contractor's

right to proceed with all or any portion of such Work by issuance of a written termination notice to Contractor.

23.2    Upon termination pursuant to the foregoing paragraph, the Owner shall have the right to complete the Work, the term "complete" to include repairing, remediation, removing or correcting any non-conforming or unsatisfactory Work, or to employ another contractor or other subcontractors to so do, and the Owner shall have the right to take possession of and use any of the materials, tools, equipment, supplies and other property then in use by Contractor for such Work or present on the Site. Owner shall return tools and equipment owned or leased by Contractor to Contractor upon completion of the job in as-good condition as when taken over by Owner, ordinary wear and tear excepted. Should Owner take over completion of the Work or obtain another contractor or subcontractors to so do, Owner's sole obligation shall be to pay Contractor, upon completion of the Work and subject to other provisions of this Contract that may reduce or suspend payment, (a) for Contracts providing for lump-sum or price-fixed based Work, the lesser of either (i) the percentage of any moneys due that represent the percentage of conforming Work satisfactorily completed by Contractor under this Contract prior to the effective date of Owner's termination notice to Contractor, less any amounts previously paid or (ii) the lump-sum or fixed-price for the Contract less all costs and expenses incurred by Owner in completing the Work and less any amounts previously paid; and (b) for Work to be performed on a basis of other than lump-sum or fixed-price, an amount determined by the compensation terms and conditions of this Contract for satisfactory and conforming Work performed and obligations incurred prior to the effective date of Owner's termination notice to Contractor, less any amounts previously paid and less any costs or expenses incurred by Owner to repair, remediate, remove or correct unsatisfactory or non-conforming Work. Notwithstanding anything to the contrary herein, in the case of lump-sum or fixed-price Contracts, if the costs and expenses incurred by Owner in completing the Work when subtracted from (a)(ii) above as provided herein, or in the case of non lump-sum, non fixed-price Contracts, if the costs and expenses incurred by Owner to repair, remediate, remove or correct unsatisfactory or non-conforming Work when subtracted from (b) above as provided herein, results in a negative sum, the Contractor and its sureties, if any, shall be liable for and shall, upon notice from the Owner, promptly pay to Owner the amount of such negative sum. The Owner shall not be required to obtain proposals for completing such Work, but may make such expenditures as in the Owner's sole judgment will best accomplish such reasonable and timely completion.

23.3    Upon receipt of any such written termination notice, Contractor shall, at its expense, for that Work affected by any such termination, assist the Owner in making an inventory of all materials and equipment in storage at the Site, in route to the Site, in storage or manufacture away from the Site, and on order from suppliers, assign to the Owner subcontracts, supply contracts and equipment rental agreements all as designated by the Owner; and remove from the Site all construction materials and equipment listed in said inventory other than such construction materials and equipment that are designated in writing by the Owner to be utilized by the Owner in completing such Work.

23.4    Owner's sole liability to Contractor for termination pursuant to this Section 23 or for assumption of Work is contained in this Section 23 and Owner shall not be liable for any costs, claims, damages or liabilities whatsoever of Contractor or its Subcontractors, including, without limitation, consequential, incidental, special or indirect damages, loss of anticipated profit or reimbursement for Work unperformed.

24.    **Deductions.**  Owner shall have the right to deduct any loss, damage, liability, debt or claim, liquidated or otherwise, which such Owner may have against Contractor from the payment or amount owing to Contractor under this Contract or any other agreement between Owner and Contractor, or between or among any Affiliate (individually or in combination) and Contractor.

25.    **Protection Against Claims and Bonding.**

25.1    This Contract shall not be binding against the Owner until the Owner has received such payment and performance bonds as may be required by the terms of this Contract in forms satisfactory to the Owner. Where required by this Contract, performance bonds and payment bonds shall each be made out in one hundred percent (100%) of the total price payable under this Contract and must be issued by a bonding company approved by the Owner. The bonds shall be signed by an authorized official of the bonding company and must be accompanied by the bonding agent's certified and current power of attorney. The Contractor shall deliver the required bonds to the Owner upon execution of this Contract and prior to commencement of the Work.

25.2    Contractor shall pay and completely satisfy all claims for labor, equipment, rentals and material employed or used by it in connection with any or all of the Work performed when those claims become due and payable. Contractor shall ensure that no liens of any kind are fixed upon or against the property of Owner by Contractor's employees, Subcontractors or Subcontractor employees. To the fullest extent permitted by law, Contractor hereby indemnifies, holds harmless Owner and Affiliates and agrees to defend same against any claims or rights of lien or security interests upon Owner's property or the Work as a result of the furnishing of labor, material or equipment under the terms of this Contract. Contractor shall, if required by the Owner, at time of delivery of any aspect of the Work or at such time as any payment under this Contract is due to be made, furnish the Owner with a verified certificate (or any similar document reasonably requested) showing names of Contractor's Subcontractors, materialmen and suppliers hereunder, the Work done or to be done by and the amount payable to each, and furnish waivers or other evidence acceptable to the Owner that said Subcontractors, materialmen and suppliers have been paid in full or in sufficient amount to justify the payment that is otherwise due. Should Contractor fail to supply such certificate or waivers or other evidence, or if, at any time, Owner should determine that Owner or any of its property might become liable for any claim or subject to any lien that is chargeable to Contractor, Owner may retain out of any payment then due Contractor under this Contract or any such payment thereafter to become due, an amount sufficient to completely indemnify Owner against such claims and liens, including all of Owner's costs associated therewith. Owner may retain the amount withheld until Contractor delivers to Owner a complete release of the claims and liens that is satisfactory to Owner. Owner may discharge or remove any claims or liens by bonding, payment or otherwise, all of which are chargeable to Contractor together with all attorneys' fees and costs, and Owner may deduct the amount of those claims and liens, attorneys' fees and costs in accordance with Section 24 of this Contract.

26.    <u>Use of Site</u>. All materials and equipment shall be brought into the Site by making use of such roadways and drives as designated by the Owner or across the grounds along routes established by the Owner. At all times construction areas shall present a neat, orderly, and workmanlike appearance. Any streets, roadways, sidewalks, ground, plantings, trees or other property that may be damaged as a result of the Work shall be properly repaired or duly replaced in a timely manner by the Contractor to the full satisfaction of the Owner. The Contractor shall protect public roads and bridges that may be damaged by, interfered with, or given undue wear by reason of the Work done under this Contract, and shall repair or replace them if damaged at its own expense, to the satisfaction of the governmental authorities or the owners thereof. In the event the Work involves construction under or about public roads or railroads, the Contractor shall make suitable arrangements with governmental authorities and railroads to the end that the public using the highways and the movement of trains shall be safeguarded from accident and delay. Contractor shall receive, unload, store in a secure place, and deliver from storage to the construction site all materials and equipment required for the performance of this Contract. If storage facilities and methods of storage are not described in the applicable specifications, the location of storage must be approved by the Contract Manager. Contractor shall at all times keep its work areas in a neat, clean and safe condition. Upon completion of any portion of the Work, Contractor shall promptly remove all of its equipment, temporary structures and surplus materials not to be used at or near the same location during later stages of Work. Upon completion of the Work and before final payment is made, Contractor shall, at its expense, and in a timely manner, satisfactorily dispose of rubbish, unused materials, and other equipment and materials belonging to it or used in the performance of the Work, including return to the Owner of any salvageable materials supplied by the Owner or paid for by the Owner for incorporation into the Work but

not used; and Contractor shall leave the premises in a neat, clean and safe condition. In the event of Contractor's failure to comply with the foregoing, the same may be accomplished by the Owner at Contractor's expense.

27.   **Hazardous Materials**.   If Contractor should discover asbestos or other Hazardous Substance while performing the Work that were not known to exist, Contractor shall notify the Owner's representative immediately.   Contractor shall not remove or further disturb such Hazardous Substance until Owner has provided Contractor with written instructions related thereto.

28.   **Governing Law**. The validity, interpretation and construction of this Contract shall be governed in accordance with the Laws of the state in which the Owner's Site for which the Work being performed is located without reference to that state's principles of conflicts of law, except that Work in Mississippi shall be governed and construed in accordance with Arkansas law.   **EACH PARTY WAIVES ITS RESPECTIVE RIGHT TO ANY JURY TRIAL WITH RESPECT TO ANY LITIGATION ARISING FROM, UNDER OR IN CONNECTION WITH THIS CONTRACT.**

29.   **Nonwaiver**.   The failure of Owner to insist upon, in any instance, strict performance by the Contractor of any of the terms of this Contract shall not be construed as a waiver of Owner's right to enforce such terms on any future occasion.

30.   **Severability**.   It is agreed that if any clause or provision of this Contract is by the courts held to be illegal or void, the validity of the remaining portions and provisions shall not be affected, and the rights and obligations of the parties shall be enforced as if this Contract did not contain such illegal or void clauses or provisions.

31.   **Consequential Damages**.   **UNDER NO CIRCUMSTANCES SHALL OWNER OR ANY AFFILIATE HAVE ANY LIABILITY TO ANY OTHER PERSON OR ENTITY, INCLUDING, BUT NOT LIMITED TO, CONTRACTOR AND SUBCONTRACTORS, THEIR EMPLOYEES, AGENTS AND REPRESENTATIVES, FOR ANY CONSEQUENTIAL, INCIDENTAL, OR OTHER INDIRECT LOSS OR DAMAGES, PUNITIVE, OR EXEMPLARY DAMAGES OR COSTS HOWSOEVER CAUSED.**   Any limit of liability contained in any Contractor-provided document attached hereto shall be null and void.

32.   **Headings**.   The headings in this Contract are for ease of reference only and shall not be used to construe or interpret the provisions of this Contract.

33.   **Attorneys' Fees**.   Should it become necessary for Owner or an Affiliate to engage in legal proceedings for the purpose of enforcing this Contract or for the purpose of recovering damages sustained by Owner or an Affiliate due to Contractor's breach of this Contract, Owner and any Affiliate shall be entitled to reimbursement by Contractor for costs, attorneys' fees and any other reasonable expenses incurred in connection with those legal proceedings.

34.   **Third-Party Beneficiaries**.   Any Affiliate receiving the benefits of Work provided by Contractor, directly or indirectly, shall be a third-party beneficiary entitling such Affiliate to all warranties and indemnities as if the Affiliate were Owner as well as all rights normally accorded to a third party beneficiary. Except for such Affiliates, this Contract is solely for the benefit of the Parties hereto, and no third party shall be entitled to rely upon any provision hereof, claim any benefit hereby or enforce any right hereunder, except permitted successors and assigns.

35. **Counterparts, Signatures, and Originals.**

35.1   This Contract may be executed in multiple counterparts and by different parties on separate counterparts, each of which when so executed shall be deemed to be an original and all of which, taken together, shall constitute but one and the same Contract. The parties agree that the Contract will be considered signed when the signature of a party is delivered by facsimile transmission. Such facsimile signature shall be treated as having the same effect as an original signature.

35.2   Any original of this Contract or any document it references may be photocopied and stored on computer tapes and disks (the "Imaged Document"). The Imaged Document, if introduced in printed format in its original form in any judicial, arbitral, mediation, regulatory, or administrative proceeding, will be admissible as between the Parties to the same extent and under the same conditions as other business records originated and maintained in documentary form. Neither Party shall object to the admissibility of the Imaged Document (or photocopies of the Imaged Document) on the basis that such were not originated or maintained in documentary form, under a hearsay rule, a best evidence rule, or any other evidentiary rule.

36.   **Survival.** The provisions of this Contract that by their nature continue shall survive any expiration or termination of this Contract, including, but not limited to, all obligations or rights that exist as a result of an event or the failure of an event prior to or at the time of expiration or termination of this Contract, and all confidentiality and indemnity obligations.

37.   **Exclusive Obligors.** Notwithstanding anything in this Contract to the contrary, it is understood that the obligations of Owner hereunder shall be exclusively the obligations of the Owner, and other Affiliates shall have no responsibility or liability whatsoever in connection therewith. If this Contract was issued by or on behalf of multiple Owners, it is further agreed that each such Owner is severally and not jointly liable to Contractor, and no Affiliate shall have financial or other responsibility or liability for any goods or services that were not furnished for such Affiliate's Site or operations.

38.   **Entire Agreement.** This Contract, including all Exhibits constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations, representations, agreements, or understandings, written or oral, with respect to the subject matter hereof. The various parts of this Contract are intended to be complementary; however, any conflicts between the body of this Contract and the Exhibits attached hereto shall be resolved in favor of the terms and conditions contained in the body of this Contract.

**THUS DONE AND EXECUTED** by the following duly authorized representatives of the parties:

**OWNER**
Entergy Mississippi, Inc.

**CONTRACTOR**
Riverside Construction Co Inc

By: _Brenda Burks_

By: _D Ongillery_

Title: _Procurement Specialist_

Title: _Vice President_

Date: _09/08/09_

Date: _09/08/09_

Contract No. 10251017

Form A-2
8/4/06

Page No. 23

Contract No. 10251017
9/8/2009 8:46:40 AM

4. Modification to the contract #: 10251017-001 dated

5. Modification to the contract #: 10251017-002 dated

6. Modification to the contract #: 10251017-003 dated
   December 01, 2010

Entergy Mississippi, Inc.
Baxter Wilson Plant
770 Kemp Bottom Road
Vicksburg, MS 39180-9196

December 1, 2010

Riverside Construction Company, Inc.
Attn: Louis Miller
P. O. Box 821238
Vicksburg, MS 39182

Contract & Amendment No.   10251017 - 003

Subject:   Amendment to Contract for Entergy Mississippi, Inc. - Baxter Wilson Plant

Dear Mr. Miller:

Enclosed is subject contract amendment. *Please review, sign, and preferably email the contract to me; or you may fax it to 281-297-6218.*

Contractor should invoice Entergy Mississippi, Inc., Baxter Wilson Plant, Attn. Accounting, 770 Kemp Bottom Road, Vicksburg, MS 39180-9196. Please contact Donald K. McArthur at 601/631-6252 to obtain further information about this contract or amendment.

If you have any questions, please give me a call at 601/631-6209.

Sincerely,

*Brenda Burks*

Brenda Burks

cc:     Donald K Mcarthur
        File 10251017

Form: Fossil Amendment
7/23/10 Rev 10

Contract 10251017 - 003
12/1/2010 8:57:19 AM

**Entergy Mississippi, Inc.**
**Baxter Wilson Plant**
**770 Kemp Bottom Road**
**Vicksburg, MS 39180-9196**

**CONTRACT & AMENDMENT NO.  10251017 – 003**

**EFFECTIVE DATE: 12/1/2010**

This amendment is issued to amend the original Contract, 10251017, and any previous amendments, between Entergy Mississippi, Inc. ("Owner" or "User") and Riverside Construction Company, Inc. ("Contractor") to include the following:

1)       The end date is hereby extended through January 31, 2011.

You may contact Donald K Mcarthur, Contract Manager, at 601/631-6224.    If you have any commercial questions concerning this order, please contact Brenda Burks, at 601/631-6209.

Invoices shall separately itemize material costs, service costs, freight, the portion of the price representing manufacturing or processing machinery or other items that are exempt from taxes or subject to a lower rate and itemize tax rates applicable to each.

The completion date, all major intermediate milestones, the project schedule, the contract price and all other items, covenants and conditions of the above referenced contract, except as duly modified by this and previous Amendments, if any, remain in full force and effect.  This Amendment constitutes full and complete compensation for all time and costs (including direct, indirect, delay or impact costs) related to or arising from this Amendment.

IN WITNESS WHEREOF, the parties hereunto have affixed their firm or corporate names by their duly authorized officers or agents.

| USER | CONTRACTOR |
|---|---|
| Entergy Mississippi, Inc. | Riverside Construction Company, Inc. |
| Signature: _Brenda Burks_ | Signature: _D on Miller_ |
| Printed Name: Brenda  Burks | Printed Name: Don S. Miller, Jr. |
| Title:   Procurement Specialist | Title:   Vice President |
| Date:     4/4/2011 | Date:   March 29, 2011 |

Contract 10251017 – 003

7. Modification to the contract #: 10251017-004 dated

8. Modification to the contract #: 10251017-005 dated
   June 23, 2011

Entergy Mississippi, Inc.
Baxter Wilson Plant
770 Kemp Bottom Road
Vicksburg, MS 39180-9196

CONTRACT & AMENDMENT NO.  <u>10251017 - 005</u>

EFFECTIVE DATE: June 23, 2011

This Amendment is issued to amend the original Contract, 10251017, and any previous amendments, between Entergy Mississippi, Inc. ("Owner" or "User") and Riverside Construction Company, Inc. ("Contractor") to include the following:

1)      Article 3, <u>Description and Schedule of Work</u>:

        Section 3.5 is hereby revised to extend the contract completion date through December 31, 2011.  Work will commence as soon as the river is low enough for the work to be performed safely. Upon commencement of Work, such Work will continue until completion.

        Contractor shall will follow all marine safety procedures while making repairs on the dolphin at the fuel unloading facility.  All work will be done from a barge along side Owner's property.

        Contractor shall supply supporting documentation for parts/materials purchased for dolphin repairs.

2)      Article 4, <u>Compensation</u>:  This amendment authorizes payment of materials already procured by Contractor as referenced in Section 3.1.4 of the Contract.  Sections 4.1 and 4.2 are hereby revised to read as follows:

        4.1      "For a quantity of four (4) Morse 48 inch Buckling Column Fender #E46018, Owner will compensate Contractor the unit price of $4,167.00 each".

        4.2      "For a quantity of eight (8) each Morse 48 inch Buckling Column Fender #E46020, Owner will compensate Contractor the unit price of $4,954.00 each".

                Applicable taxes shall apply.

You may contact Charlie Bergt at 601-631-6210 or Donald K. McArthur, Contract Manager, at 601/631-6252. If you have any commercial questions concerning this order, please contact Brenda Burks at 601/631-6209.

**All other items, covenants and conditions of the above referenced contract, except as duly modified by this and previous Amendments, if any, remain in full force and effect. This Amendment constitutes full and complete compensation for all time and costs (including direct, indirect, delay or impact costs) related to or arising from this Amendment.**

IN WITNESS WHEREOF, the parties hereunto have affixed their firm or corporate names by their duly authorized officers or agents.

**USER**
Entergy Mississippi, Inc.

Signature: _____

Printed Name: <u>Brenda Burks</u>

Title: <u>Procurement Specialist</u>

Date: _____

**CONTRACTOR**
Riverside Construction Company, Inc.

Signature: <u>D SMiller</u>

Printed Name: <u>DON S. Miller, Jr.</u>

Title: <u>Vice President</u>

Date: <u>June 23, 2011</u>

Contract 10251017 – 005

9. Modification to the contract #: 10251017-006 dated May 25, 2012

 *Entergy*

May 25, 2012

Riverside Construction Co Inc
**Attn: Louis Miller**
Po Box 821238
Vicksburg, MS 39182

**Contract & Amendment No.**   10251017 - 006

**Subject:**   Amendment to Contract for Entergy Mississippi, Inc. - Baxter Wilson Plant
BW:RETRIEVE AND INSPECT FENDER SYSTEM

Louis:

Enclosed is subject contract amendment. *Please review, sign, and preferably email the contract to me; or you may fax it to 281-297-3176.*

If you have any questions, please give me a call at 601/629-6285.

Sincerely,

Nancy F Parker

cc:    Donald K Mcarthur
File 10251017

**Form: Fossil Amendment**
7/23/10 Rev 12

Contract 10251017 - 006
5/25/2012 10:49:42 AM

Entergy Mississippi, Inc.
Baxter Wilson Plant
770 Kemp Bottom Road
Vicksburg, MS 39180-9196

CONTRACT & AMENDMENT NO.   10251017 - 006

EFFECTIVE DATE:  May 25, 2012

This Amendment is issued to amend the original Contract, 10251017, and any previous amendments, between Entergy Mississippi, Inc. ("Owner" or "User") and Riverside Construction Co Inc ("Contractor") to include the following:

The purpose of this Amendment is to extend the Contract Substantial Completion Date from December 31, 2011 to May 31, 2013 to allow time to make repairs due to constantly changing river levels.

You may contact Donald K Mcarthur, Contract Manager, at 601/631-6252.   If you have any commercial questions concerning this order, please contact Nancy F Parker, at 601/629-6285.

All other items, covenants and conditions of the above referenced contract, except as duly modified by this and previous Amendments, if any, remain in full force and effect.  This Amendment constitutes full and complete compensation for all time and costs (including direct, indirect, delay or impact costs) related to or arising from this Amendment.

IN WITNESS WHEREOF, the parties hereunto have affixed their firm or corporate names by their duly authorized officers or agents.

| USER | CONTRACTOR |
|---|---|
| Entergy Mississippi, Inc. | Riverside Construction Co Inc |
| Signature: | Signature: |
| Printed Name: Nancy F Parker | Printed Name: Don S. Miller, Jr. |
| Title:   Sr. Lead Procurement Specialist | Title:   Vice President |
| Date:   May 31, 2012 | Date:   May 29, 2012 |

Contract 10251017 – 006

EXHIBIT "B"

| COMPANY: | RIVERSIDE CONSTRUCTION COMPANY, INC. |
|---|---|
| LOCATION | VICKSBURG, MS -- MS RIVER LEFT DECENDING BANK |
| PROJECT: | BAXTER WILSON -- FUEL DOCK STRUCTURE REPAIRS |

| MONTH | BILLING TO DATE (ADJUSTED) | THIS MONTH | TOTAL | COMMENTS |
|---|---|---|---|---|
| May-11 | $ 71,478.76 | $ 71,478.76 | $ 71,478.76 | |
| June-11 | $ - | $ - | $ - | |
| July-11 | $ - | $ - | $ - | |
| August-11 | $ - | $ - | $ - | |
| September-11 | $ 54,050.00 | $ 4,779.98 | $ 58,829.98 | |
| October-11 | $ 95,405.00 | $ 3,299.41 | $ 98,704.41 | |
| November-11 | $ - | $ - | $ - | |
| December-11 | $ - | $ - | $ - | |
| January-12 | $ 820.00 | $ - | $ 820.00 | |
| February-12 | $ - | $ - | $ - | |
| March-12 | $ - | $ - | $ - | |
| April-12 | $ - | $ - | $ - | |
| May-12 | $ 223,728.75 | $ 556.95 | $ 224,285.70 | |
| June-12 | $ 356,197.50 | $ - | $ 356,197.50 | |
| July-12 | $ 50,680.00 | $ 3,930.34 | $ 54,610.34 | |
| August-12 | $ 93,552.50 | $ 34,098.90 | $ 127,661.40 | |
| September-12 | $ 384,050.00 | $ 466.71 | $ 384,516.71 | |
| October-12 | $ 46,190.00 | $ - | $ 46,190.00 | |
| November-12 | $ 282,133.75 | $ 23,517.60 | $ 305,651.35 | THROUGH 11-16-12 |
| December-12 | $ - | $ - | $ - | |
| GRAND TOTAL ----> | $ 1,586,817.50 | $ 142,128.65 | $ 1,728,946.15 | |

| INVOICE # | INVOICE DATE | PAY DUE DATE | AMOUNT OF PAYMENT | COMMENTS |
|---|---|---|---|---|
| 4801 | 06/02/11 | 07/25/11 | $ 57,183.01 | MATERIAL ONLY -- MORSE RUBBER BUMPERS FOR FUEL DOCK REPAIR |
| 5130 | 11/02/12 | 11/7/2012 | $ 18,721.58 | MATERIAL ONLY -- 4 ADDITIONAL MORSE RUBBER BUMPERS FOR FUEL DOCK REPAIR |
| 5131 | 11/02/12 | 11/7/2012 | $ 350,000.00 | PROGRESS PAYMENT REQUEST #1 |
| | | | | |
| | | | | |
| GRAND TOTAL OF PAYMENTS TO DATE ----> | | | $ 425,904.59 | |

| OUTSTANDING BALANCE ----> | $ 1,303,041.56 |
|---|---|

EXHIBIT "C"

**RIVERSIDE**
CONSTRUCTION CO. INC.  VICKSBURG, MS
601-636-3255

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/16/2012 | 5134 |

4111 Washington Street
Vicksburg, MS 39180

Bill To

Entergy Mississippi, Inc,
770 Kemp Bottom Road
Vicksburg, Ms. 39180

| P.O. No. | Terms | Due Date | Account # | Project |
|----------|-------|----------|-----------|---------|
| | Due on receipt | 11/16/2012 | | |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Final Invoice for remainder of work | | 1,303,041.55 0.00% | 1,303,041.55 0.00 |

| | | |
|---|---|---|
| **Total** | | $1,303,041.55 |
| **Payments/Credits** | | $0.00 |
| **Balance Due** | | $1,303,041.55 |

FEE BILL, CIVIL CASES, CIRCUIT COURT

State of Mississippi
Warren County

RIVERSIDE CONSTRUCTION COMPANY, INC. VS ENTERGY MISSISSIPPI,

Case # 13,0016-CI       Acct #        Paid By CHECK    Receipt No.  66012
--------------------------------------------------------------------------
                  CLERK FEE                          85.00
                  JURY TAX                            3.00
                  COURT ADM                           2.00
                  COURT REPORTER                     10.00
                  LAW LIBRARY                         2.50
                  COURT CONSTITUENT                    .50
                  STATE COURT ED                      2.00
                  COMPR COURT FUND                   10.00
                  CIVIL ASSIST FUND                   5.00
                  COURT ADM(LOCAL RULE                2.00
                  JUDICIAL SYSTEM OPER               40.00




                                       ===========
                                Total    $162.00
--------------------------------------------------------------------------


Payment received from Christopher Solop



Transaction  53821 Received  2/ 5/2013 at  8:25 Drawer   1 I.D. JENNYF

Account Balance Due          0.00              Receipt Amount      $162.00

By _____ D.C.  Shelly Ashley-Palmertree, Circuit C


Case # 13,0016-CI       Acct #        Paid By CHECK    Receipt No.  66012

Case: 75CI1:13-cv-00016   Document #: 1-1   Filed: 02/04/2013   Page 1 of 1

## COVER SHEET
## Civil Case Filing Form
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

**Court Identification Docket #**

County #   Judicial District   Court ID (CH, CI, CO)

| Case Year | Docket Number |
|---|---|
| 2013 | 00016 CI1 |

**Local Docket ID**

Mississippi Supreme Court   Form AOC/01
Administrative Office of Courts   (Rev 2009)

Month 02   Date 04   Year 13
This area to be completed by clerk

Case Number if filed prior to 1/1/94

In the CIRCUIT   Court of WARREN   County —   Judicial District

**Origin of Suit (Place an "X" in one box only)**
- [X] Initial Filing
- [ ] Reinstated
- [ ] Remanded
- [ ] Reopened
- [ ] Foreign Judgment Enrolled
- [ ] Joining Suit/Action
- [ ] Transfer from Other court
- [ ] Appeal
- [ ] Other

**Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form**

Individual _____ Last Name _____ First Name _____ Maiden Name, if applicable _____ M.I. ___ Jr/Sr/III/IV ___
____ Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of _____
____ Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity
D/B/A or Agency _____

Business Riverside Construction Company, Inc.   Mississippi
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
____ Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A _____

Address of Plaintiff 4111 Washington Street, Vicksburg, MS 39180   MS Bar No. 7687
Attorney (Name & Address) Christopher Solop, BISS, P.O. Box 14028, Jackson, MS 39236
____ Check ( x ) if Individual Filing Initial Pleading is NOT an Attorney

Signature of Individual Filing: _____

**Defendant - Name of Defendant - Enter Additional Defendants on Separate Form**

Individual _____ Last Name _____ First Name _____ Maiden Name, if applicable _____ M.I. ___ Jr/Sr/III/IV ___
____ Check ( x ) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of _____
____ Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A or Agency _____

Business Entergy Mississippi, Inc.   Mississippi
Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated
____ Check ( x ) if Business Defendant is acting in the name of an entity other than the above, and enter below:
D/B/A _____   MS Bar No. _____

Attorney (Name & Address) - If Known _____

**Damages Sought:** Compensatory $ 1,303,041.56   Punitive $ 3,000,000.00   ___ Check ( x ) if child support is contemplated as an issue in this suit.*
*If checked, please submit completed Child Support Information Sheet with this Cover Sheet

**Nature of Suit (Place an "X" in one box only)**

| Domestic Relations | Business/Commercial | Children/Minors - Non-Domestic | Real Property |
|---|---|---|---|
| [ ] Child Custody/Visitation | [ ] Accounting (Business) | [ ] Adoption - Contested | [ ] Adverse Possession |
| [ ] Child Support | [ ] Business Dissolution | [ ] Adoption - Uncontested | [ ] Ejectment |
| [ ] Contempt | [ ] Debt Collection | [ ] Consent to Abortion Minor | [ ] Eminent Domain |
| [ ] Divorce:Fault | [ ] Employment | [ ] Removal of Minority | [ ] Eviction |
| [ ] Divorce: Irreconcilable Diff. | [ ] Foreign Judgment | [ ] Other _____ | [ ] Judicial Foreclosure |
| [ ] Domestic Abuse | [ ] Garnishment | **Civil Rights** | [ ] Lien Assertion |
| [ ] Emancipation | [ ] Replevin | [ ] Elections | [ ] Partition |
| [ ] Modification | [ ] Other _____ | [ ] Expungement | [ ] Tax Sale: Confirm/Cancel |
| [ ] Paternity | **Probate** | [ ] Habeas Corpus | [ ] Title Boundary or Easement |
| [ ] Property Division | [ ] Accounting (Probate) | [ ] Post Conviction Relief/Prisoner | [ ] Other _____ |
| [ ] Separate Maintenance | [ ] Birth Certificate Correction | [ ] Other _____ | **Torts** |
| [ ] Termination of Parental Rights | [ ] Commitment | **Contract** | [ ] Bad Faith |
| [ ] UIFSA (eff 7/1/97; formerly URESA) | [ ] Conservatorship | [X] Breach of Contract | [ ] Fraud |
| [ ] Other _____ | [ ] Guardianship | [ ] Installment Contract | [ ] Loss of Consortium |
| **Appeals** | [ ] Heirship | [ ] Insurance | [ ] Malpractice - Legal |
| [ ] Administrative Agency | [ ] Intestate Estate | [ ] Specific Performance | [ ] Malpractice - Medical |
| [ ] County Court | [ ] Minor's Settlement | [ ] Other _____ | [ ] Mass Tort |
| [ ] Hardship Petition (Driver License) | [ ] Muniment of Title | **Statutes/Rules** | [ ] Negligence - General |
| [ ] Justice Court | [ ] Name Change | [ ] Bond Validation | [ ] Negligence - Motor Vehicle |
| [ ] MS Dept Employment Security | [ ] Testate Estate | [ ] Civil Forfeiture | [ ] Product Liability |
| [ ] Worker's Compensation | [ ] Will Contest | [ ] Declaratory Judgment | [ ] Subrogation |
| [ ] Other _____ | [ ] Other _____ | [ ] Injunction or Restraining Order | [ ] Wrongful Death |
| | | [ ] Other _____ | [ ] Other _____ |

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

RIVERSIDE CONSTRUCTION COMPANY, INC.                    **PLAINTIFF**

V.                                          CIVIL ACTION NO. 13, 0016-CI

**ENTERGY MISSISSIPPI, INC.**                              **DEFENDANT**

### SUMMONS

THE STATE OF MISSISSIPPI

TO:   Entergy Mississippi, Inc.
      308 East Pearl Street
      Jackson, Mississippi 39201

### NOTICE TO DEFENDANT

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written responses to the Complaint to the attorney for the Plaintiff, Christopher Solop, Biggs, Ingram, Solop & Carlson, PLLC, 111 Capitol Building, 111 East Capitol Street, Suite 101, Jackson, Mississippi 39201; Post Office Box 14028, Jackson, Mississippi 39236-4028.

Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

ISSUED UNDER MY HAND AND THE SEAL of said Court, this ⁴ day of February, 2013.

CIRCUIT COURT CLERK

By: _____
Deputy Clerk

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

**RIVERSIDE CONSTRUCTION COMPANY, INC.**                                        **PLAINTIFF**

**V.**                                                       CIVIL ACTION NO. _13,DO\l\o-CI_

**ENTERGY MISSISSIPPI, INC.**                                                    **DEFENDANT**

### SUMMONS

THE STATE OF MISSISSIPPI

TO:   Entergy Mississippi, Inc.
      308 East Pearl Street
      Jackson, Mississippi 39201

### NOTICE TO DEFENDANT

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written responses to the Complaint to the attorney for the Plaintiff, Christopher Solop, Biggs, Ingram, Solop & Carlson, PLLC, 111 Capitol Building, 111 East Capitol Street, Suite 101, Jackson, Mississippi 39201; Post Office Box 14028, Jackson, Mississippi 39236-4028.

Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

ISSUED UNDER MY HAND AND THE SEAL of said Court, this __U__ day of __February__, 2013.

CIRCUIT COURT CLERK

By: _____
     Deputy Clerk

## PROOF OF SERVICE – SUMMONS
### Entergy Mississippi, Inc.

I, the undersigned process server, served the summons and complaint upon the person or entity named above in the manner set forth below:

_____ **FIRST CLASS MAIL AND ACKNOWLEDGEMENT SERVICE.** By mailing (by first class mail, postage prepaid), on the date stated in the attached Notice, copies to the person served, together with copies of the form of notice and acknowledgement and return envelope, postage prepaid, addressed to the sender.

__X__ **PERSONAL SERVICE.** I personally delivered copies to _James Snider_ on the __5th__ day of _February_, 2013, where I found said person in _Hinds County_ County of the State of Mississippi.

_____ **RESIDENCE SERVICE.** After exercising reasonable diligence I was unable to deliver copies of the summons and complaint to _____ within _____ County, Mississippi. I served the summons and complaint on the _____ day of _____, 2013, at the usual place of abode of said _____, by leaving a true copy of the summons and complaint with _____ who is the _____, a member of the family of the person served, above the age of sixteen years and willing to receive the summons and complaint, and thereafter on the _____ day of _____, 2013, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

At the time of service I was at least 18 years of age and not a party to this action.

_Brison Shumpert_
Process Server

STATE OF MISSISSIPPI

COUNTY OF _Hinds_

Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named _Brison Shumpert_ who being first by me duly sworn states on oath that the matters and facts as set forth in the foregoing "Proof of Service-Summons" are true and correct as therein stated.

_/s/ Brison Shumpert_
Process Server

Sworn to and subscribed before me this the _5th_ day of _February_, 2013.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: _9/17/15_

LYNDY R. RAYBORN
STATE OF MISSISSIPPI
ID No
98835
NOTARY PUBLIC
Comm Expires
April 17, 2015
RANKIN COUNTY